# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

WONDER WILLIAMS,

                                        Plaintiff,

         v.                                        9:15-CV-1278
                                                   (GLS/ATB)
CAPTAIN B. CHUTTEY, et al.,

                                        Defendants.

WONDER WILLIAMS, Plaintiff, pro se
NICOLE E. HAIMSON, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Senior United States District Court Judge.  This civil rights complaint alleges that the defendants denied plaintiff due process in connection with a disciplinary hearing at Auburn Correctional Facility ("Auburn") which began on October 19, 2012 and concluded on October 29, 2012. (Complaint ("Compl.")) (Dkt. No. 1).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 34).  Plaintiff has responded in opposition to the motion. (Dkt. No. 40).

## I.    **Relevant Facts**

The following facts are not disputed.  In October of 2012, plaintiff was incarcerated at the Auburn Correctional Facility ("Auburn"), confined to

Administrative Segregation ("Ad Seg"). (Compl. ¶ 6; Def.s Statement of Material Facts ("SMF") ¶ 1 (Dkt. No. 34-1); Graham Declaration ("Decl.") ¶ 2 (Dkt. No. 34-3)).  The administratively confined inmates at Auburn shared cells in the Special Housing Unit ("SHU") with those inmates who were confined there for disciplinary reasons. (Def.s' SMF  ¶ 1-2; Graham Decl. ¶ 16). Plaintiff was part of a program whereby Ad Seg inmates could earn privileges that the disciplinary inmates did not have. (Def.s' SMF ¶ 3; Graham Decl. ¶ 16).  Plaintiff had earned the privilege of watching television and of purchasing food from the commissary, so that he could have snacks while watching television. (Def.s' SMF ¶ 4; Graham Decl. ¶ 17).

On October 14, 2012, plaintiff was given his "mandatory television time," and he was allowed to purchase food to consume while watching television. (Def.s' SMF ¶ 8; Chuttey Decl. ¶ 32 (Dkt. No. 34-5); Haimson Decl. Ex. A ("Pl.'s Dep.") at 19 (Dkt. No. 34-8)).[1]  Because the disciplinary SHU inmates were not allowed such privileges, Ad Seg inmates who purchased food at the commissary during television time were given the opportunity to store any leftover food in a locker prior to returning to their cells. (Def.s' SMF ¶¶ 5, 9; Chuttey Decl. ¶ 32). On October 14, 2012, when plaintiff's television time was over, he had leftover food items, and he was given the opportunity to put his leftover items in a locker before being escorted back to his SHU cell. (Def.s' SMF ¶ 9; Chuttey Decl. ¶ 32).

---

[1] The court notes that plaintiff's deposition transcript is separately paginated.  The page numbers are in the top right hand corner of the page and do no correspond to the pages assigned by the court's electronic filing system ("CM/ECF").  The court will cite to the original page numbers on the transcript because plaintiff may not have access to a CM/ECF paginated document.

Plaintiff put some items in his locker and secured the locker.[2] (Def.s' SMF ¶ 10; Chuttey Decl. ¶ 32). Prior being escorted back to his SHU cell, plaintiff was pat-frisked by Corrections Officer ("Officer") Baney, who found four to six pieces of hard candy in each of plaintiff's front pants pockets. Plaintiff does not dispute that, as a result of the frisk, Officer Baney found hard candy in plaintiff's pockets. Plaintiff also does not seriously dispute that he was forbidden from bringing the candy back to his cell.[3] On October 15, 2012, Officer Baney issued plaintiff a misbehavior report, charging plaintiff with violating rule 113.22 which states that an inmate "shall not possess an article in an area where its use or possession is prohibited," and rule 114.10 which states that an inmate "shall not smuggle or attempt to smuggle an item from one area to another." (Def.s' SMF ¶¶ 13-14; Chuttey Decl. Ex. A at 4).

Defendant Captain Brian Chuttey[4] was assigned as the hearing officer for plaintiff's disciplinary hearing. (Chuttey Decl. ¶ 6 & Ex. A at 9).[5] The hearing began on October 19, 2012 and concluded on October 29, 2012. (*Id.*) When defendant

---

[2] At his deposition in this case, plaintiff disputed that he "secured" the locker before he was frisked by Officer Baney. (Pl.'s Dep. at 19). He testified that "my locker was not secured or nothing yet. They . . . told me to stand on the wall . . . before I got to put everything in there." (*Id.*) The court will discuss this disputed fact below.

[3] At his deposition, plaintiff testified that "everybody knows you can't eat something in your cell. Everybody knows I can't it in the cell. I mean at least I wasn't told I could take it in the cell." (Pl.'s Dep. at 42).

[4] Defendant Chuttey is now retired from his position at Auburn. (Chuttey Decl. ¶ 1).

[5] Exhibit A to defendant Chuttey's declaration consists of the hearing-related documents, including defendant Chuttey's assignment papers, plaintiff's misbehavior report, the assistance forms, the "Case Data Worksheet," the witness interview notice, the hearing record sheet, and the written disposition of the hearing. (Chuttey Decl. Ex. A at 1-9) (Dkt. No. 34-6). The pages of Exhibit A are numbered at the bottom, and the court will cite to the pages as numbered by defense counsel.

Chuttey began the hearing on October 19, 2012, he soon discovered that plaintiff had not been afforded an employee assistant prior to the hearing. (Chuttey Decl. Ex. B at 3-4).[6]  Plaintiff testified that when he was afforded the opportunity to choose an assistant, he noted on the form that he wished to have "only" a civilian-staff assistant. (Chuttey Decl. Ex. A at 6; Ex. B at 3).  However, the individuals listed on the form were only corrections officers.  Thus, plaintiff did not choose an assistant, and he appeared at the hearing without having been assigned an employee to help him. (Chuttey Decl. Ex. B at 3-4).  As a result, defendant Chuttey adjourned the hearing so that plaintiff could obtain the required assistant, after informing plaintiff that he would be required to choose from the list provided. (Chuttey Decl. Ex. B at 3-4, 6-9).  In the meantime, defendant Chuttey read the charges into the record and "took"[7] plaintiff's "not guilty plea." (*Id.* at 7-9).

The hearing was reconvened on October 26, 2012. (Chuttey Decl. Ex. B at 9).  Defendant Chuttey confirmed that plaintiff had the opportunity to meet with his assistant to discuss witnesses and document requests. (*Id.* at 9-10).  No inmate witnesses were requested, but plaintiff asked defendant Chuttey to call Officer Baney (the author of the misbehavior report) and the "Tier Review Officer," who was responsible for determining the severity of the hearing.[8]  Plaintiff also asked that

---

[6] Exhibit B to defendant Chuttey's declaration is the transcript of plaintiff's disciplinary hearing.  The pages of the transcript have been numbered at the bottom, and the court will cite to the transcript with the page numbers at the bottom of the page, rather than the number assigned by the court's electronic filing system.

[7] Plaintiff objected to defendant Chuttey doing anything prior to plaintiff obtaining his "assistant," even taking his "not guilty" pleas. (Chuttey Decl. Ex. B at 7-9).

[8] Disciplinary hearings are ranked in terms of severity from Tier I (least severe) to Tier III (most severe). *See Figueras v. Venettozzi*, No. 9:15-CV-909, 2017 WL 564815, at *1 n.2 (N.D.N.Y. Jan. 20,

defendant Chuttey himself be called to testify, but defendant Chuttey denied plaintiff's request and refused to step down as hearing officer because of the alleged "conflict" which was created by plaintiff's request. (*Id.* at 10-15). Over plaintiff's objection, defendant Chuttey also denied plaintiff the opportunity to call the Tier Review Officer, finding that the Tier Review Officer's testimony would not be relevant to the issues being considered at the hearing. (*Id.* at 25-26).

Plaintiff admitted that he purchased the hard candy, and that he consumed some of it while watching television. (*Id.* at 21). Plaintiff also admitted that when he was done with his television time, he put some food items into the locker, but when Officer Baney frisked plaintiff, there were various pieces of hard candy in his pockets. However, plaintiff disputed whether his locker was "secured" prior to the frisk and stated that he did not intend to take the candy back to his cell. (*Id.* at 17-21). Plaintiff testified that he forgot that the candy was in his pockets. (*Id.* at 20). Plaintiff asked defendant Chuttey for any Unusual Incident Reports, "To-Froms," or Logbook entries that described the incident, but defendant Chuttey denied plaintiff's request because "there [were] none." (*Id.* at 23-24).

The hearing was adjourned again. Officer Baney testified when the hearing was reconvened on October 29, 2012, after an approved extension request by defendant Chuttey. (*Id.* at 27-33). Plaintiff asked Officer Baney if, upon finding the candy, he had

---

2017) (citing 7 N.Y.C.R.R. § 270.3 (Tiers of Disciplinary Hearings); *Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998)). *See also Davis v. Connolly*, No. 13 Civ. 5726, 2017 WL 193286, at *2 n.1 (S.D.N.Y. Jan. 18, 2017). The higher the tier, the more serious the violation and the more severe the potential penalties (including loss of good time and disciplinary confinement). *Id.* The Tier Review Officer is responsible for reviewing the misbehavior report and assigning a "Tier" level to the hearing.

to ask other officers whether plaintiff was allowed to bring the candy back to his cell. (*Id.* at 28-29).  Officer Baney answered: "Yes, because I was unaware of the". (*Id.*) Defendant Chuttey cut Officer Baney off in mid-testimony and simply stated: "Yes." (*Id.*)  Officer Baney stated that he notified Sergeant Donnelly, who told Officer Baney that plaintiff was not allowed to take any items back to his cell. (*Id.*)  Officer Baney also testified that after the candy was confiscated from plaintiff's pockets, it was put back in the his locker. (*Id.* at 32).

Plaintiff then testified at his disciplinary hearing and argued that there was insufficient evidence to support a guilty finding for either charge. (*Id.* at 33-42). Plaintiff reiterated his objections to the hearing and to defendant Chuttey's refusal to testify himself and his refusal to call the Tier Review Officer as a witness.  Plaintiff argued that he never left the room where his locker was located, so he was still "authorized" to possess the candy, and for the same reason, he was innocent of the "smuggling" charge.  He also argued that the candy was not "contraband" because it was put back into plaintiff's locker after it was taken out of his pockets.  Finally, he argued that even Officer Baney was unsure of the policy and had to ask his supervisor whether plaintiff was allowed to take the candy back to his cell. (*Id.*)

Defendant Chuttey found plaintiff guilty of both charges and sentenced him to 90 days of SHU disciplinary confinement, 180 days loss of privileges, commissary, and phone, and 90 days loss of good time. (Chuttey Decl. Ex. A at 1-2).  Defendant Chuttey noted that the "reason" for his disposition was to impress upon plaintiff that "he must not smuggle his commissary items from the allowed and approved area in SHU back to

his cell." (Chuttey Decl. Ex. A at 2). The disciplinary findings were affirmed administratively, and plaintiff brought an Article 78 proceeding in New York State Court. During the pendency of the Article 78 proceeding, the Attorney General's Office chose not to pursue the defense, plaintiff's hearing disposition was reversed, and his records expunged of the misbehavior. (Dkt. No. 40-3 at 27).

Plaintiff raises various due process claims in this action.

(1)    Defendant Chuttey began the disciplinary hearing before plaintiff had the opportunity to speak with an employee assistant.

(2)    Defendant Chuttey denied plaintiff relevant witnesses and failed to provide plaintiff with documentary evidence that he requested.

(3)    Defendant Chuttey was not impartial and should have recused himself after plaintiff requested that Chuttey testify at the disciplinary hearing.

(4)    There was insufficient evidence to find plaintiff guilty of either of the violations with which he was charged.

(5)    Defendants Graham and Prack are liable for the due process violations because they reviewed plaintiff's disposition on appeal and failed to correct the constitutional violations committed by defendant Chuttey.

(Compl. ¶ 7, Causes of Action).

## II.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no

rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III.  <u>Due Process</u>

### A.  **Legal Standards**

To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected

8

by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in keeplock or a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004).

A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). "Where the plaintiff was confined for an intermediate duration–between 101 and 305 days– . . . a district court must "make a fact-intensive inquiry," . . . examining "the actual circumstances of SHU confinement" in the case before it . . . ." *Palmer v. Richards*, 364 F.3d at 64-65 (citations omitted). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest. However, "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully

9

developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted).

The due process protections afforded inmates facing disciplinary hearings that are found to affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (*citing*, *inter alia*, *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

### B.    Application

#### 1.    Liberty Interest

In this case, defendants have not addressed whether plaintiff had a liberty interest. Rather, defendants argue that plaintiff was afforded due process under *Wolff*, that there was no personal involvement by defendant Prack, and that all defendants were entitled to qualified immunity. However, prior to addressing the adequacy of the procedures followed in plaintiff's case, this court will discuss whether plaintiff had a liberty interest in the first instance.

Plaintiff suffered the following "deprivations" as a result of the disciplinary hearing: (1) 90 days "keeplock" in SHU; (2) 180 days loss of package, commissary, and telephone privileges; and (3) 90 days loss of good time. (Chuttey Decl. Ex. A at 1). The

court will address each one of the deprivations to determine if it is sufficient in itself or they are sufficient together to create a liberty interest.

With respect to the 90 day SHU "keeplock," while it is true that plaintiff served the entire sentence prior to the reversal of the disciplinary hearing, the court would note that 90 days is less than the 101 days noted above as the lower limit which would require a "fact-intensive" evaluation of the conditions of confinement prior to making the determination of whether the deprivation was atypical and significant. In addition, plaintiff in this case was already in SHU as an Ad Seg inmate. Thus, his confinement was the same as prior to the imposition of SHU "keeplock." The only difference in plaintiff's case was the loss of his extra privileges for a period of 180 days.[9] Plaintiff

---

[9] In the complaint, plaintiff states that while serving keeplock in SHU, he was deprived of many other privileges, and that he was deprived of grooming equipment, adequate hygienic equipment, shorter and fewer showers, personal clothing, limited exercise, and unsanitary conditions in the showers, and mechanical restraints when leaving his cell. (Compl. ¶ 20). Plaintiff testified about the conditions in SHU. (Pl.'s Dep. at 93-147). The evidence showed that he was moved to a different cell in SHU, but he was moved prior to the conclusion of his disciplinary hearing, and then he was moved again 90 days later to "M Three" cell. (Pl.'s Dep. at 95). He spend 90 days in "M Six" cell. (Pl.'s Dep. at 94, 97). Plaintiff testified that he did not know if he was moved because of the hearing or not. (Pl.'s Dep. at 95). Although the complaint states that he was not afforded recreation, the evidence presented to plaintiff at his deposition showed that he refused "rec." or "didn't even try to go" on various occasions. (Pl.'s Dep. at 98-99, 103-104). Although plaintiff testified about poor conditions in SHU, they were no different that the conditions to which he was subjected prior to and after his disciplinary confinement. Defendants produced grievances which complained about the same alleged conditions (food and hygiene) prior to the plaintiff's disciplinary confinement. (Pl.'s Dep. at    ). Plaintiff also testified that all the cells were not equal, and that he had been placed in some bad cells in SHU before, and that some were "more bearable than others," but he "didn't question that it was unconstitutional." (Pl.'s Dep. at 106). Plaintiff did claim that M Six was "barren," and "not up to standards. (*Id.*) While plaintiff complained about the size of M Six, and that there may have been plexiglass on the door, he also stated that "a lot of them" were the same size. (Pl.'s Dep. at 108). Although plaintiff complained about the "pests" in his cell, he stated that "the pest problem is just up . . . up . . . in that unit. They have a pest problem." (Pl.'s Dep. at 110-11). Although plaintiff claimed at his deposition that he had trouble with his laundry, this was not due to his confinement in a particular SHU cell. (Pl.'s Dep. at 112). He conceded that he did not have any trouble with the plumbing in M Six, but it was another cell that had plumbing problems. (Pl.'s Dep. at 113). Plaintiff then stated that he had been in a cell "worse than M Six, but M Six was not good . . . during the time I was in there." (Pl.'s Dep. 114). Plaintiff was

did not suffer any "unusual" conditions because he was not transferred to a "more restrictive" confinement than that to which he was normally subjected. Thus, the length of plaintiff's confinement did not create a liberty interest.

Contrary to plaintiff's assertion in his complaint, it is well-settled that the loss of privileges, such as telephone, packages, and commissary is not sufficient, in itself to create a liberty interest. *Waters v. Prack*, No. 9:13-CV-1437, 2017 WL 1239642, at *6 (N.D.N.Y. Feb. 24, 2017) (citing *Johnson v. Enu*, No. 08-CV-0158, 2011 WL 3439179, at *12 (N.D.N.Y. July 13, 2011), *Rep't Rec. adopted*, 2011 WL 3439524 (N.D.N.Y. Aug. 5, 2011) (the loss of phone, package, and commissary privileges does not give rise to a protected liberty interest); *Pitsley v. R. Ricks*, No. 96-CV-0372, 2000 WL 362023, at *4 (N.D.N.Y. Mar. 31, 2000) (Mordue, J.) (recognizing that prison inmates to not enjoy a constitutional right to unlimited telephone use (citing cases)); *DeMaio v. Kelly*, No. 95-CV-0329, 1996 WL 685729, at *2 (W.D.N.Y. Nov. 22,1996) ("Loss of certain privileges—viz., recreation, special events, telephone and packages—does not represent the type of grievous loss which could reasonably be viewed as imposing an atypical and significant hardship on a prison inmate.")), *Rep't Rec. adopted*, 2017 WL 1187871 (N.D.N.Y. Mar. 30, 2017). Thus, in this case, plaintiff's loss of privileges does not establish a liberty interest.

Finally, plaintiff's sanction included a 90 loss of "good time." Generally a loss

---

essentially describing the typical deprivations in SHU, and although he did not have a particularly good cell, and the conditions may not have been ideal, plaintiff described the conditions that he was subjected to prior to, and after, the disciplinary sentence. Thus, because he was already confined to SHU, and in fact, testified that he had been in worse cells than M Six, he has not shown that his deprivation, resulting from the hearing, was atypical and significant, based on the conditions to which he was allegedly subjected for 90 days.

of good time will establish a liberty interest because the loss of good time affects the length of one's sentence. However, plaintiff in this case did not lose his good time because his disciplinary determination was reversed and his records expunged. There is no evidence that plaintiff was otherwise disadvantaged by the hearing officer's recommendation that plaintiff lose 90 days of good time. *Waters* was a very similar situation to plaintiff's situation in this case. Magistrate Judge Peebles found that because the plaintiff never actually "lost" his good time, due to an Article 78 court's reversal of the disciplinary determination, "this aspect of the hearing officer's determination does not provide a basis to conclude that plaintiff was deprived of a liberty interest. 2017 WL 1239642, at  at *5.

This court came to a similar conclusion in *Smith v. Ashley*, No. 9:15-CV-496, 2016 WL 8732642, at *9 (N.D.N.Y. Apr. 1, 2016), *Rep't Rec. adopted*, 2016 WL 3823395 (N.D.N.Y. July 12, 2016). "The fact that plaintiff's initial punishment included a loss of good time is insufficient to establish a liberty interest if the guilty finding was ultimately reversed, and the good time was never lost. *Id.* (citing *Jones v. Lindblad*, No. 05-CV-814S, 2009 WL 804155, at *9 (W.D.N.Y. Mar. 25, 2009); *Husbands v. McClellan*, 957 F. Supp. 403, 409 (W.D.N.Y. 1997)). The same is true in this case. The reversal of plaintiff's disciplinary finding and the expungement of his records prevented plaintiff from losing good time. Therefore, plaintiff cannot establish a liberty interest that was protected by due process. Because plaintiff cannot establish a liberty interest, the court could recommend dismissal without examining the procedures that plaintiff challenges. However, the court will address these procedures in the

alternative.

### 2.    Challenged Procedures

#### a.    Timing of the Disciplinary Hearing

Plaintiff claims that defendant Chuttey first violated plaintiff's due process rights when he began the disciplinary hearing, knowing that plaintiff did not have the benefit of an employee to assist him as required by the constitution and the regulations in New York.  It is true that plaintiff did not have employee assistance prior to the commencement of the hearing on October 19, 2012.  It is important to discuss the facts surrounding plaintiff's situation.  On October 15, 2012, four days prior to the scheduled hearing, plaintiff was given the opportunity to choose an assistant, and he signed the Tier Assistance Form on that date. (Chuttey Decl. Ex. A at 6).  On the form, plaintiff noted that "I request assistance from civilian staff only." (*Id.*)  None of the individuals listed on the form were civilians. (Chuttey Decl. Ex. B at 3).

Because of his notation, apparently, plaintiff was not assigned any assistant prior to the hearing.  At the beginning of the hearing, plaintiff explained to defendant Chuttey that he was not afforded any assistance, and that he had requested a civilian-staff assistant.  Defendant Chuttey explained to plaintiff that there were no civilian staff members available, and that plaintiff had to choose one of the three individuals listed on the Tier Assistance Form if he wished to have an employee assistant. (*Id.*)  It is clear from the hearing testimony that plaintiff did not choose any one of the listed individuals when he was first presented with the form, even though the current form has three

individuals with check-marks by their names.[10] (*Id.* at 4).  At the hearing, defendant

Chuttey allowed plaintiff to choose three individuals and confirmed on the record that

plaintiff chose three names from the list. (*Id.* at 5).

Defendant Chuttey ultimately adjourned the hearing so that plaintiff could obtain

assistance. (*Id.* at 9).  However, prior to adjourning the hearing, defendant Chuttey read

the charges from the misbehavior report into the record and took plaintiff's plea of "not

guilty" to each charge. (*Id.* at 5-9).  Plaintiff strenuously opposed this procedure, and

believed that the hearing could not proceed in any way, prior to receiving his

assistance.  In fact, plaintiff even refused to enter a plea to the first charge, resulting in

defendant Chuttey's entry of the not guilty plea on plaintiff's behalf. (*Id.* at 7-8).

Defendant Chuttey blamed plaintiff for "delaying" the hearing by refusing to choose an

assistant when he was given the opportunity to do so four days prior to the hearing. (*Id.*

at 7).

The court notes, first, that defendant Chuttey apparently did not know in advance

that plaintiff did not choose an assistant who could help him obtain documents or

interview witnesses prior to the hearing.  Based on the testimony, it is clear that

defendant Chuttey only discovered this problem after he began the hearing.  Although

he read the charges into the record and took not guilty pleas from plaintiff, no testimony

was heard until after plaintiff had been afforded his assistant.

The New York State regulations provide that "[i]f the inmate requests an

---

[10] Defendant Chuttey asked plaintiff "why didn't you pick three at the time of your serving." (Chuttey Decl. Ex. B at 4).  Plaintiff explained that "cuz I let him know that I wanted civilian staff only.  I didn't want no correction officer three so I asked him who was the civilian staff on this list and he didn't know . . . ." (*Id.*)

assistant and is eligible for an assistant in accordance with the provisions of Subpart 251-4 of this Title, the hearing may not start until 24 hours after the assistant's initial meeting with the inmate. 7 N.Y.C.R.R. § 254.6(a)(1). In this case, defendant Chuttey did "start" the hearing prior to plaintiff obtaining his employee assistant. Although defendant Chuttey read the charges into the record and took plaintiff's not guilty plea, he did not discuss any substantive matters until the adjourned date of October 26, four days after plaintiff met with his assistant on October 22, 2012.

To the extent that plaintiff alleges that defendant Chuttey violated New York State regulations, such violation alone does not necessarily rise to the level of a constitutional violation. *See Collins v. Ferguson*, 804 F. Supp. 2d 134, 137-38 (W.D.N.Y. 2011) (citing *Eleby v. Selsky*, 682 F. Supp. 2d 289, 293 (W.D.N.Y. 2010) (even if plaintiff could show a deviation from procedures required under state law or DOCCS regulations, it is federal constitutional standards, rather than state law that define the requirements of procedural due process).

To the extent that defendant Chuttey could be found to have violated plaintiff's constitutional rights,[11] any such violation would have been harmless. The Second Circuit has held that prison disciplinary hearings are subject to a harmless error analysis. *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) ("it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial. If a person may be convicted and obliged to serve a

---

[11] The court makes no such finding. The court is only assuming such a violation for purposes of the harmless error analysis.

substantial prison sentence notwithstanding a constitutional error determined to be harmless . . . surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for prison rules infraction despite a harmless error in adjudicating the violation.")  To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural deficiencies, in the sense that the errors affected the outcome of the hearing.  *See, e.g., Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) (citing, *inter alia*, *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991).

In this case, nothing happened on October 19th that would have affected the result of the hearing or that would have been different if plaintiff had met with his assistant prior to that date.  The hearing officer's recitation of the charges would have been the same, and plaintiff would still have pled "not guilty" to the charges.  Plaintiff was then given the opportunity to choose an employee assistant.  The hearing was adjourned, and reconvened after plaintiff met with the chosen assistant.  Thus, to the extent that the court could find that defendant Chuttey committed a constitutional error when he began the hearing, any such error was harmless.

### b.    Denial of Witnesses and Documentary Evidence

Plaintiff alleges that defendant Chuttey improperly denied plaintiff two witnesses.  When the disciplinary hearing reconvened on October 26, 2012, plaintiff informed defendant Chuttey that he wished to call Chuttey as a witness as well as the Tier Review Officer. (Chuttey Decl. Ex. B at 10).  Defendant Chuttey told plaintiff that

he could not be the hearing officer and testify at the hearing at the same time. (*Id.*) Plaintiff agreed, and he and defendant Chuttey discussed why plaintiff wished to call defendant Chuttey to testify and why he would then have a "conflict." Plaintiff reasoned that defendant Chuttey "ran" the SHU, was a member of the "Exec Team," and was an expert on the rules and regulations governing the Ad Seg program, including knowing what constituted "contraband." (*Id.* at 11-15).

Defendant Chuttey refused to call himself as a witness and refused to recuse himself from hearing plaintiff's case. (*Id.*) Defendant Chuttey clearly explained why he was not going to testify and why he had no "conflict" requiring his recusal. He explained that he was not involved in the October 14th incident, did not witness the incident, and did not have any information regarding the incident. Defendant Chuttey also explained to plaintiff that if he wished to ***argue*** that the candy was not "contraband" or that he was authorized to have the candy, he could make the argument to defendant Chuttey without defendant Chuttey's "testimony" regarding those facts. Defendant Chuttey stated that his expertise might help him decide the issue.[12] (*Id.*)

An inmate's right to call witnesses is not absolute. *Eleby v. Selsky*, 682 F. Supp. 2d at 291 (citing inter alia *Ponte v. Real*, 471 U.S. 491, 495 (1985)). Prison officials have the authority to refuse to call witnesses whose testimony the official "reasonably

---

[12] Plaintiff was discussing the charge of using or possessing and article in an area where its use or possession is prohibited, and defendant Chuttey stated:

> Correct, and that may or may not be an appropriate charge, but that's an argument you can make to me. Is that what you are trying to do? So it's less about me . . . being a part of . . . the incident, well, because I play [sic] no part in the incident that day. . . . I wasn't any part of that.

(Chuttey Decl. Ex. B at 14).

regards as duplicative or non-probative," while at the same time, may be required to explain, in a limited manner, why the witness was not called." *Id.* at 291-92 (citing *Russell v. Selsky*, 35 F.3d 55, 55-59 (2d Cir. 1994); *Ponte*, 471 U.S. at 497). They are not required to give a detailed explanation, and may do so by "'making the explanation part of the administrative record at the disciplinary proceeding.'" *Id.* at 292 (quoting *Ponte*, 471 U.S. at 497).

In this case, it was clear that defendant Chuttey did not participate in or witness the October 14th incident involving plaintiff. Defendant Chuttey's testimony was not relevant, and plaintiff could, and did, argue that he did not intend to take the candy back to his cell. No one, including defendant Chuttey, disputed that plaintiff was authorized to purchase the candy or that he was authorized to have the candy while he was watching television. The issue was whether plaintiff had candy in his pockets after he was supposed to have put away his leftover food items and what he was planning on doing with that candy. Defendant Chuttey's "knowledge" of the rules governing SHU was not going to be relevant to the factual issues being decided. Thus, defendant Chuttey's refusal to testify or to step down as the hearing officer did not violate plaintiff's due process rights.

Plaintiff also asked that the Tier Review Officer be called as a witness. The Tier Review Officer reviews misbehavior reports that are issued on a daily basis and determines the seriousness of the charges so that they may be referred to the appropriate disciplinary body for action. 7 N.Y.C.R.R. § 251-2.2(b) (Function of Review Officer). At the hearing defendant Chuttey explained why he was denying this officer as a

witness. (Chuttey Decl. Ex. B at 25-26). Plaintiff wished to call the Review Officer to ask him why he decided that the plaintiff's Misbehavior Report was going to be handled as a Tier III hearing (the most severe of the disciplinary hearings with the potential for the most severe penalties). Defendant Chuttey found that plaintiff was not entitled to know the basis for the Review Officer's decision.

Defendant Chuttey was correct. Although an inmate is entitled to notice of the charges and an opportunity to be heard, among other due process rights, there is no requirement that the prison officials explain why they chose the more serious hearing level. The court notes that the more serious the charges, the greater the protections afforded the inmate under the New York State regulations, and the fact that the hearing level is the most severe does not prevent a lesser penalty from being imposed if appropriate. Thus, defendant Chuttey did not violate plaintiff's due process rights by failing to call the Review Officer so plaintiff could ask why he was subjected to a Tier III hearing. Hearing officers must have the discretion to exclude irrelevant or unnecessary testimony or evidence. *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991). *See Brooks v. Piecuch*, __ F. Supp. 3d __, 2017 WL 1161489, at *9 (W.D.N.Y. Mar. 28, 2017) (citing inter alia *Kingsley, supra*). Calling the Review Officer would have been unnecessary. Defendant Chuttey did call plaintiff's third witness, Officer Baney, the author of the misbehavior report.

Plaintiff also claims that he was never given a "contraband receipt," which is required anytime contraband is confiscated. Plaintiff claims that defendant Chuttey improperly told plaintiff that the "misbehavior report" was his "contraband receipt."

Although a plaintiff is entitled to obtain documentary evidence in support of his defense, it cannot be required if the documents do not exist. Plaintiff also requested a variety of other documents that did not exist, including "To-Froms," Unusual Incident Reports," "log books," "search logs," and any other documents that were created regarding this incident. Defendant Chuttey explained that those documents also did not exist. (Chuttey Decl. Ex. B at 23-24).

To the extent that plaintiff asserts that defendant Chuttey "incorrectly" told plaintiff that his misbehavior report was his "contraband receipt," there is no due process violation. Plaintiff asserts that whenever "contraband" is confiscated, the regulations require that the prison officials give the inmate a "contraband receipt." While this may be true, the prison officials did not confiscate plaintiff's candy, so there was no reason to give him a "receipt." There is no question that, after the candy was taken out of plaintiff's pocket, it was put back in his locker. Defendant Chuttey's statement that the misbehavior report was the contraband "receipt," was his way of telling plaintiff that the misbehavior report was the proof that candy had been taken away from plaintiff, even if the candy was later returned to his locker. Therefore, to the extent that defendant Chuttey was "technically incorrect" about the misbehavior report "being" the contraband receipt, this did not rise to the level of a constitutional violation.

Plaintiff also claims that defendant Chuttey would not let plaintiff properly question Officer Baney. Although inmates have the right to call witnesses, such right is not unlimited, and the hearing officer may restrict the inmate's questions if appropriate. Irrelevant questions need not be allowed in a criminal trial where there is full due

process protection. Thus, limiting questioning in a prison disciplinary hearing is not necessarily a violation of due process.

In this case, plaintiff was allowed to ask Officer Baney several questions regarding policy and procedure. He also determined that Officer Baney had to ask a supervisor if plaintiff was allowed to bring candy back into his cell, indicating that the policy was not well-known even by the officers. (Chuttey Decl. Ex. B at 28-29). However, defendant Chuttey did limit plaintiff's questioning when he attempted to have Officer Baney testify about "department policy" regarding the confiscation of "contraband." (Chuttey Decl. Ex. B at 29-32; Pl.'s Dep. at 27 (plaintiff testified that defendant Chuttey "interrupted" plaintiff while he was attempting to question Officer Baney)). Defendant Chuttey ruled that the testimony was irrelevant because the candy was not confiscated, and was almost immediately returned to plaintiff's locker, so the procedures for handling contraband[13] would be completely irrelevant. As stated above, the hearing officer need not allow irrelevant or unnecessary testimony or evidence. *Kingsley, supra*; *Eleby*, 682 F. Supp. 2d at 291-92.

### c.    Impartial Hearing Officer

An inmate is entitled to an impartial hearing officer who does not prejudge the evidence, but prison disciplinary officers are not held to the same standard of neutrality as judges or adjudicators in other contexts. *Gibson v. Rosati*, No. 9:13-CV-503, 2017

---

[13] Part of the problem in this case is that all parties continued to refer to the candy as "contraband." Plaintiff was charged with possession of an "authorized" item in an "unauthorized" place, not with possession of contraband. Although, technically if the item is possessed in an "unauthorized" place, then it could be considered contraband, but the argument over semantics was irrelevant.

WL 1534891, at *14 (N.D.N.Y. Mar. 10, 2017) (citing inter alia *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); *Patterson v. Coughlin*, 905 F.2d 564, 569 (2d Cir. 1990)), *Rep't Rec. adopted*, 2017 WL 1512371 (N.D.N.Y. Apr. 27, 2017)). A plaintiff's claim that the hearing officer was not impartial requires more than just the inmate's "subjective belief" to this effect. *Brooks v. Prack*, 77 F. Supp. 3d 301, 316 (W.D.N.Y. 2014) (citing *Frances v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989)).

Plaintiff argues that defendant Chuttey was not impartial because he should have called himself as a witness, creating a "conflict of interest." As stated above, there was no reason for defendant Chuttey to testify at the disciplinary hearing. The fact that defendant Chuttey may or may not have been an expert on SHU procedures was not relevant to the incident with which plaintiff was charged. Defendant Chuttey did not witness the incident, nor was he involved in writing the misbehavior report. Defendant Chuttey explained to plaintiff that if he wished to make arguments relative to, or had questions about procedures in SHU, then he could simply make the argument to defendant Chuttey.

Plaintiff alleges that defendant Chuttey showed his lack of impartiality by engaging in "prosecutorial questioning." (Compl. ¶ 17). Plaintiff attempts to clarify this term by stating that defendant Chuttey attempted to elicit testimony from plaintiff before he was ready to give his testimony. (*Id.*) Plaintiff states that his intent was only to testify after "all" the witnesses had finished testifying, but defendant Chuttey "made attempts" to disregard plaintiff's strategy for his defense. (*Id.*) However, it is clear that plaintiff did testify last, after Officer Baney, the only other witness who testified. Thus,

23

it is unclear what plaintiff means by "prosecutorial questioning."

As the hearing officer, defendant Chuttey is responsible for maintaining an orderly hearing and to determine the facts. *See e.g. Kinsley*, 937 F.2d at 30 (prison officials must be accorded the discretion necessary to keep a hearing within reasonable limits). Prison officials enjoy a "'rebuttable presumption that they are unbiased.'" *Jabot v. Correction Officer Minor*, No. 9:13-CV-5322113, at *11 (N.D.N.Y. July 15, 2016), *Rep't Rec. adopted*, 2016 WL 5173279 (N.D.N.Y. Sept. 21, 2016), *appeal dismissed*, No. 16-3321 (2d Cir. Sept. 27, 2016). In this case, the fact that he ruled against plaintiff, did not allow plaintiff to ask all the questions that he wanted, or that the hearing officer may have asked plaintiff some difficult, or what seemed to be, "prosecutorial" questions does not affect his impartiality in the disciplinary hearing context.

In *Moore v. Griffin*, the plaintiff claimed that the hearing officer should not have presided over the disciplinary hearing because he was present on the day of the incident and investigated the incident, while defendant argued that he was not part of the investigation and did not issue the misbehavior report. *Moore v. Griffin*, No. 9:13-CV-616, 2015 WL 5330366, at *11 (N.D.N.Y. Sept. 11, 2015). The court found that although the hearing officer ordered the strip frisk and was present in the Family Reunion area when plaintiff was escorted there by other officers to be searched, this involvement alone did not equate to bias. *Id.*

The defendant in *Moore* was more involved in Moore's incident than defendant Chuttey was in this plaintiff's incident. Plaintiff alleges only that defendant Chuttey

had a "conflict" because plaintiff wished to call him as a "witness," but only for purposes of testifying to the rules and regulation of the Ad Seg privileges program.  If inmates could create conflicts by calling their hearing officers as witnesses for any reason, the inmate could dictate who his hearing officer would be.  This would go much further than constitutional due process requires.

Plaintiff also claims that defendant Chuttey made a statement to plaintiff "off-the-record" which indicated that defendant Chuttey had "prejudged" the evidence. (Compl. ¶ 15).  Plaintiff alleges that one of the times that the recorder was turned off, defendant Chuttey told plaintiff that he was "wasting [Chuttey's] time with this Matlock shit . . . ," and that plaintiff was "going to be found guilty no matter what." (*Id.*)  Plaintiff's unsupported assertion is the only evidence of this statement. Where claims of bias are based on purely conclusory allegations, "they are routinely dismissed." *McAllister v. Call*, No. 9:10-CV-610, 2014 WL 5475293, at *12 (N.D.N.Y. Oct. 29, 2014) (quoting *Washington v. Afify*, 968 F. Supp. 2d 532, 541 (W.D.N.Y. 2003)).  Since none of the other allegations of bias are supported by any evidence, the court finds that plaintiff has failed to raise a genuine issue of material fact regarding defendant Chuttey's impartiality.  In addition, a hearing officer may satisfy the standard of impartiality if there is "some" evidence in the record supporting the findings of the hearing. *Allred v. Knowles*, No. 06-CV-456, 2010 WL 3911414, at *5 (W.D.N.Y. Oct. 5, 2010) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

### d.   Sufficiency of Evidence

Plaintiff claims that there was insufficient evidence to find him guilty of both

charges.  After plaintiff filed his Article 78 proceeding, the Attorney General's office determined that it would not defend the action.  Although plaintiff focuses on the term "contraband," he was not found guilty of possessing contraband.  Rather, he was found guilty of possessing authorized items in a place where possession of those items was not authorized.  This court agrees that if plaintiff had a protected liberty interest, there would have been insufficient evidence of this charge.  As plaintiff points out, he was still next to his locker, and in a room where the possession of the candy was "authorized."  In any event, this error would have been harmless as discussed below.

The more serious charge of "smuggling" was supported by "some reliable" evidence, even though the Attorney General's office determined that it would not defend either charge in the Article 78 proceeding.  As defendant points out, the state law sufficiency standard for prison disciplinary proceedings is much more strict that the constitutional standard.[14]  While the evidence may have been insufficient to establish a violation of section 114.10 under state law, the evidence was sufficient to pass constitutional muster.

Section 114.10 states that an inmate shall not "smuggle or *attempt* to smuggle an item from one area to another."  There is some evidence that plaintiff "attempted" to smuggle the candy back to his cell.  The regulations specifically provide that "Inmates involved in attempts or conspiracies to violate institutional rules of conduct . . . will be punishable to the same degree as violators of such rules." 7 N.Y.C.R.R. § 270.3(b).

---

[14] In order for evidence to be sufficient under state law, the charge must be supported by "substantial evidence," while the constitutional standard requires only "some reliable evidence." *See McDonald v. Zerniak*, No. 9:15-CV-141, 2016 WL 6581289, at *5-6 (N.D.N.Y. Nov. 4, 2016); *Alicea v. Howell*, 387 F. Supp. 2d 227, 232-33 (W.D.N.Y. 2005).

"Attempt" is defined as "[a]ny act which constitutes a step in a course of conduct which would result in an act of misbehavior." *Id.* § 270.3(b)(1).

In this case, the uncontested evidence is that plaintiff purchased the candy in addition to other items to consume while watching television.[15]  When plaintiff was done with his television time, he admitted placing some of the commissary items in his locker.  However, when he was pat frisked, he had hard candy in both pockets.  While plaintiff had clearly not "completed" the act of smuggling since he was still in the room where he was authorized to possess the candy, the hearing officer had at least some evidence that plaintiff intended to take the candy back to his cell.  The misbehavior report indicates, and Officer Baney stated, that plaintiff had already "secured" his locker, indicating that he had finished putting items inside, when he was pat frisked.  If the locker was secured, and plaintiff was about to be escorted back to his cell, there is circumstantial evidence that the plaintiff intended to smuggle the candy back to his cell in his pockets.

Plaintiff argues that he had no such intention, and at one point during the hearing, he claimed that he forgot to take the candy out of his pockets.  Whether plaintiff's locker was or was not secured, and whether plaintiff "forgot" to take the candy out of his pockets were questions of fact for the hearing officer to resolve.  It is clear that he did not believe plaintiff's testimony that he had not finished putting the commissary items in his locker.  While plaintiff may have been telling the truth, this court cannot reweigh the evidence before the hearing officer. *See Kotler v. Daby*, No.

---

[15] Although plaintiff appears to dispute when he purchased the candy, the timing of the purchase is irrelevant to any of the issues herein.

Case 9:15-cv-01278-GLS-ATB   Document 42   Filed 09/05/17   Page 28 of 32

9:10-CV-136, 2013 WL 1294282, at *10 (N.D.N.Y. Mar. 28, 2013) (even when plaintiff provides a very different version of the incident in question, the hearing officer is entitled to make credibility determinations in rendering his decision, and plaintiff's own testimony to the contrary does not render the disposition unsupported by some evidence) (citations omitted).  If defendant Chuttey believed Officer Baney, who stated that the plaintiff had secured his locker, defendant Chuttey could reasonably find that this constituted evidence that plaintiff was going to bring the candy back to his cell. This was at least "some reliable"[16] evidence that plaintiff was guilty of attempting to smuggle the candy back to his cell.  He was stopped from completing the act by Officer Baney, who pat frisked him and found the candy.[17]  The relevant inquiry is not whether the hearing officer's decision was "correct," but whether the decision met the requisite evidentiary standard required by the law.[18] *Hernandez v. Selsky*, 572 F. Supp. 2d 446,

---

[16] When the court uses the term "reliable" evidence, generally it is referring to cases in which the hearing officer is considering "confidential" testimony and must determine whether that testimony is "reliable." *See McDonald v. Zerniak*, 2016 WL 6581289, at *5-6 (implicit in the "some evidence" standard is the requirement that the evidence be "reliable"). In this case, there is no issue of "reliability."  Plaintiff has admitted most of the conduct asserted by Officer Baney, the issue is one of credibility and whether to believe that plaintiff did or did not intend to take the candy back to his cell. The circumstances surrounding the incident are questions that were up to the hearing officer to determine.

[17] This court must point out that the Attorney General's decision not to defend the Article 78 proceeding is not a final decision, nor was it the court's determination that the evidence was insufficient to find plaintiff guilty of the misbehavior.

[18] The court must point out that, even under the higher state law "substantial evidence" standard, the inmate need not complete the violation to be found guilty of "attempt." *See e.g. Killimayer v. Venettozzi*, 149 A.D.2d 1456, 1457 (3d Dep't 2017) (The inmate was charged with solicitation, possession of contraband, and violating facility correspondence procedures, which prohibit an inmate from conducting a mail order business from a correctional facility. In finding the inmate guilty of an attempt to violate institutional rules, the court stated that "we reject petitioner's contention that the charges cannot be sustained because there was no proof presented that petitioner had actually solicited any inmates to submit photographs to his nephew . . . " regardless of the inmate's and his

28

452 (S.D.N.Y. 2000).

### 5.    Written Disposition

Plaintiff argues in his response papers that defendant Chuttey's written disposition was insufficient to comport with due process. (Dkt. No. 40 at 24-25). Plaintiff sates that the disposition was a "sham." (*Id.* at 24).  Defendant Chuttey's "Statement of Evidence Relied Upon" states that he relied upon Officer Baney's misbehavior report and tesimony, together with the plaintiff's admission regarding the incident. (Chuttey Decl. Ex. A at 2).  The "Reasons" for the disposition were to "impress" upon the plaintiff that he should not smuggle commissary items from allowed and approved areas back to his cell. (*Id.*)  Defendant Chuttey further stated that plaintiff had been given "special privileges" because of his Ad Seg status which allowed him to watch television, purchase items from the commissary and enjoy these items while watching television.  Because the disciplinary SHU inmates do not have access to these privileges, it is important that none of the commissary items are brought back to the housing area because, they are not allowed in an area where the disciplinary inmates are housed. (*Id.*)

The written disposition was quite clear regarding the reasons for the disposition, and was also clear that the evidence relied upon was the misbehavior report and the hearing testimony.  Plaintiff's claim that the evidence was insufficient regarding the smuggling charge involves a misunderstanding of the charge itself.  The fact that the

---

witness's testimony that he did not request to be sent flyers and did not intend to solicit business.)  In fact, the inmate had argued that the mail room reviewed the flyers and deemed them "unobjectionable," but the court held that this would not alter the fact that the material was prohibited by the disciplinary rule. *Id.*

hearing officer did not believe plaintiff's version of the incident (that he either forgot to put the candy away in his locker or that he was not finished putting the candy away when he was pat frisked) is an issue of credibility, not sufficiency. It is also quite clear from the written disposition that the hearing officer believed that attempting to bring something back to one's SHU cell was a very serious matter because this conduct could be abused and could cause security concerns in the SHU. The issue was clearly not about candy, rather, it was about the act of attempting to smuggle an item back to the SHU cell, regardless of what the item was.

A written disposition provides the inmate with a written record of the proceeding and will help the inmate in potential subsequent litigation. *Wolff*, 418 U.S. at 565. The written disposition is needed for administrative review or "review by other bodies." *Id.* The written disposition in this case allows plaintiff to understand why the hearing officer made his decision, and this knowledge allowed him to formulate his appeal, even if the plaintiff disagrees with the analysis of the evidence and the result of the proceeding.

Thus, this court finds that the more serious charge is supported by constitutionally sufficient evidence, while the other charge is not. Thus, the court must now determine whether the error was "harmless" in that it did not affect the outcome of plaintiff's hearing.

Without the due process violation on the section 113.22 charge, plaintiff would still have been convicted of the more serious smuggling charge. Thus, plaintiff could still have been subjected to the same disciplinary sentence. A review of the hearing

disposition confirms this finding.  Defendant Chuttey focused on the dangers of smuggling food items into the SHU housing unit where the disciplinary inmates would not have access to the commissary purchases that the Ad Seg inmates enjoyed.

In addition, as stated above, it is undisputed that plaintiff was already in administrative SHU confinement, and based on the above analysis, there was no liberty interest.  Plaintiff was in SHU "keeplock" confinement for 90 days, and lost telephone and commissary privileges for 180 days.  He did not actually lose his good time.

To the extent that the court could find that a protectable liberty interest existed, the constitutional error in the adjudication of the lesser charge would not have affected the ultimate outcome of the case, and any such error was harmless.  Because this court finds that plaintiff's claims do not rise to the level of constitutional violations, and the only error could have risen to the constitutional level would have been harmless, the court need not address the issue of the personal involvement of defendant Prack or the defendants' qualified immunity argument.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 34) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d

Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 5, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge